IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HILLBRO LLC, dba HILLS                              No. 3:21-cv-00382-HZ
RESTAURANT, individually and on behalf
of all others similarly situated,                         OPINION & ORDER

                Plaintiffs,

     v.

OREGON MUTUAL INSURANCE
COMPANY, an Oregon corporation,

                Defendant.

Amy Williams-Derry
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

       Attorneys for Plaintiff

R. Lind Stapley
Rachel A. Rubin
Soha & Lang, PS
1325 Fourth Avenue, Suite 2000
Seattle, WA 98101

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff HILLBRO LLC d/b/a Hills Restaurant brings this class action lawsuit against Defendant Oregon Mutual Insurance Company seeking a declaratory judgment that its insurance policy, provided by Defendant, covers its business income losses stemming from the COVID-19 pandemic. Plaintiff alleges that Defendant breached its insurance contracts with Plaintiff and similarly situated policyholders when Defendant denied coverage for Plaintiff's pandemic-related business income losses. Plaintiff seeks a declaratory judgment that the insurance policy covers its alleged losses and seeks damages for breach of contract. Defendant moves to dismiss Plaintiff's Complaint for failure to state a claim.

Many businesses suffered extreme hardship and financial loss as a result of the government shutdown orders that state and local governments nationwide issued to curb the spread of COVID-19 infections throughout the country. People across the world have lost their lives and livelihood as a result of the pandemic. The Court sympathizes with the plight of businessowners who suffered significant and even catastrophic financial losses due to the government closure orders. Plaintiff's business insurance policy, however, does not cover its loss of business income. The Court grants Defendant's motion to dismiss.

## BACKGROUND

Plaintiff operates a restaurant and bar in Shoreline, Washington. Compl. ¶ 7, ECF 1. Plaintiff insured its business with a business insurance policy from Defendant. *Id*. ¶ 13. Due to the COVID-19 pandemic and business closure orders issued by the state of Washington, "Plaintiff had to close, suspend, and/or curtail its business" leading to financial losses. *Id*. ¶ 47. Although the closure orders allowed restaurants to serve take-out food for off-premises consumption, Plaintiff's business revenues have significantly reduced because Plaintiff has been

unable to use its dining room and full-service bar for on-premises food and beverage consumption. *Id*. ¶¶ 49–50, 53, 61. Plaintiff admits that COVID-19 has not been detected in its restaurant. *Id*. ¶ 51.

Plaintiff filed an insurance claim seeking coverage for its financial losses stemming from its reduced business operations. Defendant denied coverage. *Id*. ¶ 62. Plaintiff alleges that the "Business Income," "Extended Business Income," "Extra Expense," "Civil Authority," and "Ingress or Egress" coverages in its business insurance policy cover Plaintiff's financial losses. *Id*. ¶ 16.

Section I of the Policy, which provides property coverage, states: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Stapley Decl. Ex. A ("Policy") at 60, ECF 13-1. The capitalized phrases in that sentence are defined terms. The phrase "direct physical loss of or damage to" is not defined in the policy. "Covered Property" includes Buildings, Business Personal Property, or both, unless it is a kind of Property Not Covered. *Id*. A "Covered Cause of Loss" includes risks of "direct physical loss" unless the loss is excluded or limited by other provisions in Section I. *Id*. at 61.

The Policy provides "Additional Coverages" that include "Business Income," "Extended Business Income," "Extra Expense," and "Civil Authority" coverages. *Id*. at 64–66. The Business Income coverage provision states, in part:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id*. at 64. The Extended Business Income coverage provides, in part:

> If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur[.] . . . Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any covered cause of loss.

*Id.* at 64–65. The word "suspension" means "[t]he partial slowdown or complete cessation of your business activities" and "[t]hat a part or all of the described premises is rendered untenantable, if coverage for Business Income applies." *Id.* at 65.

> The Extra Expense coverage provides, in part:

> We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 65. The Civil Authority coverage states, in part:

> We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

*Id.* at 66. The Policy does not include an ingress or egress coverage provision.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Defendant moves to dismiss Plaintiff's complaint because no "direct physical loss of or damage to" property occurred to invoke coverage under the Business Income and Civil Authority coverages, and no "direct physical loss or damage to" property occurred that would provide coverage under the Extra Expense and Ingress or Egress coverages. Defendant also argues that the Ordinance or Law Exclusion excludes coverage for Plaintiff's losses.

Plaintiff argues that the Policy's undefined terms "loss of," "damage to" and "direct physical loss" cover Plaintiff's loss of the functionality and use of its covered property for dine-in services due to the closure orders. The Court disagrees.

## I.    Applicable Law

Defendant's motion applies both Oregon and Washington law to the interpretation of the Policy[1], and Plaintiff argues that Washington law applies. Def. Mot. Dismiss (Def. Mot.) 9–10,

---

[1] Defendant noted, however, that it reserves the right to argue that another state's law applies to the construction of this policy. Def. Mot. 7 n.10.

ECF 12; Pl. Resp. Mot. Dismiss (Pl. Opp'n) 7–8, ECF 15. The Court finds that Oregon law

applies to the resolution of Defendant's motion to dismiss.

A federal court sitting in diversity applies the forum state's choice of law rules to

determine what law applies. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960,

975 (9th Cir. 2013). Thus, Oregon's choice of law rules will determine whether the Court should

apply Oregon or Washington law to construe the terms of the Policy. *Id.*

Generally, when parties to a contract clearly express in the contract the law that applies,

"the contractual rights and duties of the parties are governed by the law or laws that the parties

have chosen." Or. Rev. Stat. § ("O.R.S.") 15.350(1)–(2). Because the insurance contract does not

contain a choice of law provision, O.R.S. 15.360 applies. O.R.S. 15.360 established the process

for determining what law applies when the parties have not made an effective choice of law in

the contract. Under that statute, the Court must identify the most appropriate law to apply by:

> (1) Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;
>
> (2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and
>
> (3) Evaluating the relative strength and pertinence of these policies in:
>
>> (a) Meeting the needs and giving effect to the policies of the interstate and international systems; and
>>
>> (b) Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states.

O.R.S. 15.360.

As to the first factor, the states with a relevant connection to the transaction and parties are Oregon and Washington. Defendant's principal place of business is located in Oregon. Comp. ¶ 8. Plaintiff's restaurant is located in Washington, and Plaintiff purchased the Policy through an agent located in Washington. Policy 1. Defendant issued an insurance contract that covers Plaintiff's business property located in Washington. Policy 1. The Policy includes several endorsements specific to Washington businesses which amend the Policy. *See, e.g.*, Policy 23, 33. Plaintiff's alleged losses occurred in Washington. Compl. ¶¶ 10–12. Thus, both Oregon and Washington have a "relevant connection with the transaction or the parties[.]" *See Portfolio Recovery Assoc., LLC v. Sanders*, 366 Or. 355, 371 (2020) (holding that O.R.S. 15.360 does not limit "relevant connection[s]" to those that existed at the time of the transaction).

The second factor asks the court to identify the policies undergirding any apparent conflict in the relevant states' law. The party that advocates for application of another state's law bears the burden to identify a material difference between Oregon law and the law of the other state. *Portfolio Recovery Assoc., LLC v. Sanders*, 292 Or. App. 463, 468 (2018) (citing *Spirit Partners, LP v. Stoel Rives, LLP*, 212 Or. App. 295, 301 (2007)). Plaintiff identifies the following material differences between Oregon and Washington law: (1) Defendant argues that Oregon law requires physical damage before coverage is triggered under the Policy, and Washington law contains no such damage requirement; (2) Washington law requires courts to "liberally construe insurance policies to provide coverage wherever possible" and construe exclusions strictly against the insurer; (3) Washington law requires limiting and exclusionary clauses to be listed in the exclusions, not within the grant of coverage, and Oregon law contains no such requirement; (4) a term is ambiguous under Washington law if it is fairly susceptible to two different interpretations that are reasonable, and Oregon law finds ambiguity when a term

has two plausible interpretations; (5) extrinsic evidence of the parties' intent may be introduced to inform policy interpretation under Washington law, and Oregon law does not permit a court to consider extrinsic evidence of intent. Pl. Opp'n 7–9.

The Court finds that none of the differences identified by Plaintiff present an apparent conflict between Oregon and Washington law that requires the Court to make a choice. Under Washington law, courts construe insurance policies as contracts. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wash.2d 705, 710 (2016). Washington courts interpret insurance policies by "consider[ing] the policy as a whole, giving the policy a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Id.* (quotation marks and citation omitted). "Where possible, [the court] harmonize[s] clauses that seem to conflict in order to give effect to all of the contract's provisions." *Id.* (citing *Realm, Inc. v. City of Olympia*, 168 Wash. App. 1, 5 (2012)).

> If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

*Weyerhaeuser Co. v. Commercial Ins. Co.*, 142 Wash.2d 654, 666 (2000).

The framework for interpreting insurance policies under Oregon law closely resembles Washington law:

> Interpretation of an insurance policy is a question of law, and our task is to ascertain the intention of the parties to the insurance policy. We determine the intention of the parties based on the terms and conditions of the insurance policy.
>
> If an insurance policy explicitly defines the phrase in question, we apply that definition. If the policy does not define the phrase in question, we resort to various aids of interpretation to discern the parties' intended meaning. Under that interpretive framework, we first consider whether the phrase in question has a plain meaning, *i.e.,* whether it is susceptible to only one plausible interpretation. If the

phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis. If the phrase in question has more than one plausible interpretation, we will proceed to the second interpretive aid. That is, we examine the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole. If the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company[.] However, as this court has stated consistently, a term is ambiguous *only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.,* continue to be reasonable, despite our resort to the interpretive aids outlined above.

*Holloway v. Rep. Indem. Co. of Am.*, 341 Or. 642, 649–50 (2006) (internal quotation marks, citations, and brackets omitted) (emphasis in original).

In comparison, both states' laws provide that insurance policies are interpreted in the same manner as other contracts. Both states' laws give effect to all the terms in the policy and start by determining whether undefined terms of the policy are clear and unambiguous. Both states' laws apply the plain meaning of unambiguous terms. Although Oregon and Washington use different phrasing to define an ambiguity, there is no apparent conflict between the two definitions. Oregon defines an ambiguous term as one that is susceptible to more than one "plausible interpretation," while Washington law defines an ambiguous term as one that is susceptible to more than one reasonable interpretation. Both states laws consider the context in which the terms appear in the policy, although Washington law appears to do so at the outset when determining whether a term has more than one reasonable interpretation, and Oregon law provides that courts look to the context within the policy only if the term is susceptible to more than one plausible interpretation. Under both states' laws, if a term of the policy remains ambiguous—that is, both interpretations remain reasonable—then the court resolves the ambiguity in favor of the insured and against the insurer. Finally, although Washington courts explicitly allow consideration of extrinsic evidence to resolve ambiguities, Oregon courts do not always allow consideration of extrinsic evidence. *Great Am. All. Ins. Co. v. SIR Columbia Knoll*

*Assoc. Ltd. P'ship*, 416 F. Supp. 3d 1098, 1103–04, n.4 (D. Or. 2019) (concluding that Oregon law "does not bar Oregon courts from considering extrinsic evidence when construing ambiguous insurance policy provisions"). To the extent that the differences concerning consideration of extrinsic evidence creates any apparent conflict, that conflict has no bearing on the Court's analysis here because, as explained below, the Court finds that the relevant terms are unambiguous as a matter of law, and neither states' laws permit the Court to proceed further in the contract interpretation analysis under those circumstances. *Weyerhaeuser*, 142 Wash.2d at 666 ("If the language is clear and unambiguous, the court must enforce it as written[.]"); *Holloway*, 341 Or. at 650 ("If the phrase in question has a plain meaning, we will apply that meaning and conduct no further analysis.").

The Court finds that there is no apparent conflict between Washington and Oregon law concerning the interpretation of insurance policy language. *See SIR Columbia Knoll Assoc.*, 416 F. Supp. 3d at 1104–05 (discussing both states' law and finding no apparent conflict). Thus, the Court will apply Oregon law. *Portfolio Recovery Assoc.*, 366 Or. at 374 (". . . when the laws are not 'apparently conflicting,' there is no path to choosing the law of another state unless the parties have made an 'effective choice' of law to govern the contract claim.").

## II.    Coverage Provisions

Defendant argues that Plaintiff's pandemic-related business losses are not covered under the terms of the Policy because no risk of direct physical loss to Plaintiff's business property occurred. Determining whether insurance coverage exists is a two-step process. First, the insured bears the burden to establish that the loss falls within the policy's grant of coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas. Co.*, 222 Or. App. 453, 465 (2008). If the insured meets that burden, then the insurer bears the burden of establishing that an exclusion applies. *Id.*

To determine whether the Policy covers Plaintiff's alleged losses, the court must first decide whether Plaintiff's alleged losses were caused by or resulted from a "Covered Cause of Loss." The Policy defines Covered Causes of Loss as "[r]isks of direct physical loss" unless otherwise limited or excluded under other provisions of the Property coverage. Policy 61. Next, the Court must determine whether a Covered Cause of Loss caused or resulted in (1) "direct physical loss of or damage to property" as required to invoke coverage under the Business Income and Civil Authority Coverages; or (2) "direct physical loss or damage to property," as required to invoke coverage under the Extra Expense coverage. Policy 64–66. If coverage exists, then the court must determine whether Defendant met its burden to show that Plaintiff's claims fall within a policy exclusion.

As explained above, Oregon rules of policy interpretation provide that "[i]f an insurance policy defines the phrase in question, [then the court] applies that definition." *Holloway*, 341 Or. at 650. If the insurance policy does not define the phrase, the court first considers whether it has a plain meaning. *Id.* If so, the court applies that meaning and conducts no further analysis. *Id.* If the phrase "has more than one plausible interpretation," then the court examines "the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Id.* (quotation marks and citation omitted). If a term of the policy remains ambiguous after engaging in those exercises, then "'any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company[.]'" *Id.* (quoting *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001)). A term is ambiguous only if it is susceptible to more than one plausible interpretation. *Id.*

Defendant argues that the relevant policy language is unambiguous, and Plaintiff argues that the language is broad enough to cover its losses or, alternatively, that it is ambiguous and

should be construed against Defendant. Def. Mot. 11; Pl. Opp'n 5. The Court agrees with the courts which have construed the phrase "physical loss of or damage to covered property" and similar language and finds that the relevant policy language is unambiguous. *See, e.g.*, *Protégé Rest. Partners, LLC v. Sentinel Ins. Co., Ltd.*, ____ F. Supp. 3d ____, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) (finding the phrase "direct physical loss of or physical damage to" unambiguous); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *5 (D. Or. Aug. 4, 1999) (same). Thus, the Court will construe the terms of the Policy by applying the definitions of the defined terms and the plain meaning of the undefined terms. *Holloway*, 341 Or. at 650. The parties also implicitly agree that it is appropriate for the Court to decide this motion based on the Court's review of the Policy because it is incorporated by reference into Plaintiff's Complaint. Def. Mot. 4–6; Compl. ¶¶ 15–16.

A.    Plain Meaning of Policy's Terms

Each of the coverage provisions apply only if a Covered Cause of Loss occurred. Policy 8 ("We will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss."). A "Covered Cause of Loss" is defined in the Policy as a risk of "direct physical loss." *Id.* at 61. The court determines whether words have a plain meaning by "reference to the usual source of ordinary meaning, the dictionary." *Phillips v. State Farm Fire & Cas. Co.*, 302 Or. App. 500, 506 (2020) (noting that "directly" means "without any intervening space or time : next in order[;] . . . "in a straight line: without deviation of course." (quoting Webster's Third New Int'l Dictionary 641 (unabridged ed. 2002)). "Direct" means "'characterized by or giving evidence of a close esp. logical, causal, or consequential relationship.'" *Summit Real Est. Mgmt., LLC v. Mid-Century Ins. Co.*, 298 Or. App. 164, 177

(2019) (holding that "direct loss" means "loss resulting immediately and proximately from an event") (quoting Webster's Third New Int'l Dictionary 640).

"Physical" means "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary: material, natural[.]" Webster's Third New Int'l Dictionary 1706; *see also* 10A Couch on Insurance § 148.46 (3d ed. 2019) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"). The dictionary defines "loss" as "the act or fact of losing : failure to keep possession : deprivation;" or "an instance of losing[.]" Webster's Third New Int'l Dictionary 1338.

Applying those definitions, the Court concludes that for a Covered Cause of Loss to have occurred, Plaintiff must demonstrate that COVID-19 or Governor Inslee's executive orders caused harm to or destroyed its business property or dispossessed Plaintiff of its business property.

> i.    Meaning of "direct physical loss of or damage to property"

The Business Income provision covers the insured's lost income that is "caused by direct physical loss of or damage to property at the described premises." Policy 64. The Civil Authority provision covers business income when an action of civil authority prohibits access to the insured's property due to "direct physical loss of or damage to property" at a location other than the insured's property. *Id.* at 66. Thus, whether those provisions cover Plaintiff's losses turns on the meaning of "direct physical loss of or damage to property."

The word "damage" means "loss due to injury : injury or harm to person, property, or reputation[.]" Webster's Third New Int'l Dictionary 571. Applying that definition, the plain meaning of the phrase "direct physical loss of or damage to property" is direct (without any intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to property. The plain meaning of those terms thus requires a Covered Cause of Loss to directly cause property—Plaintiff's property or other property—to be lost or physically damaged for coverage to exist under the Business Income and Civil Authority provisions. *See Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at *5 (D. Or. June 7, 2016) ("physical loss or damage" means "any injury or harm to a natural or material thing"), *vacated by stipulation of the parties*, 2017 WL 1034203 (Mar. 6, 2017); *Columbiaknit, Inc.*, 1999 WL 619100, at *5 ("'The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses.'" (quoting *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. and Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990))). *Cf. Wy. Sawmills, Inc. v. Transp. Ins. Co.*, 282 Or. 401, 406 (1978) (Including the word "'physical' in the phrase 'physical injury to . . . tangible property' . . . negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'").

The Civil Authority provision extends coverage for loss of Business Income and necessary Extra Expense "caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss." Policy 66. Thus, the Civil Authority provision requires that an action of civil authority prohibited access to

Plaintiff's restaurants due to the loss, destruction, dispossession of or injury to property other than Plaintiff's property for coverage to apply.

        ii.     Meaning of "direct physical loss or damage to property"

The Extended Business Income coverage provides that the loss of business income must be caused by "direct physical loss or damage." *Id.* at 13. The Extra Expense coverage covers "direct physical loss or damage to property." *Id.* Despite the slightly different phrasing, the parties do not argue that the phrase "direct physical loss or damage to property" has a different meaning from the phrase "direct physical loss of or damage to property." The Court thus assumes, without finding, that those phrases have the same plain meaning for purposes of this opinion.

## III.    Application

Having determined the plain meaning of the undefined terms of the Policy, the Court now applies the plain meaning of those terms to the language of the Policy to determine whether coverage exists.

        A.     Business Income and Extra Expense Coverage

Defendant argues that the phrase "direct physical loss of or damage to property" and "direct physical loss or damage" in the Business Income and Extra Expense provisions require Plaintiff to lose its property or demonstrate a physical alteration in the condition of its property for coverage to apply. Def. Mot. 16. The Court agrees.

Oregon courts have construed the phrase "direct physical loss of or damage to property" and similar phrases to require some degradation in the condition of the property to invoke coverage under the "damage to property" portion of the phrase. In *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, this Court emphasized that a policy that covers "direct physical loss"— and the inclusion of the word "physical" in particular—covers only direct damage and does not

extend to consequential damages. 1999 WL 619100, at *4. Applying that construction, the Court

held that the insurance policy of the plaintiff, a clothing manufacturer whose property had

suffered water intrusion damage resulting in water damage to some of its merchandise, could

recover only for the damage to the clothing directly damaged by the water intrusion. *Id.* at *7.

The court ruled that only articles of clothing that were "physically changed in some manner,"

either by the water intrusion or the resulting mold and mildew spores, were covered under the

terms of the policy. *Id.* at *7–8.

The Oregon Supreme Court held in the context of a liability insurance policy that

including the word "physical" in the policy excluded coverage for consequential or intangible

damages. *Wyoming Sawmills*, 282 Or. at 406. In that case, the plaintiff sought indemnification

for damages it caused by selling defective lumber to a customer. *Id.* at 403. The purchaser used

the defective lumber as studs in a building, and the studs later warped and twisted. *Id.* The court

held that the policy, which defined "property damage" as "physical injury to or destruction of

tangible property," did not cover consequential damages such as diminished value but did cover

the cost of labor for "tearing out and putting back other parts of the building . . . in order to

replace the studs[.]" *Id.* at 404, 408.

The Ninth Circuit also has held that the phrase "direct physical loss" requires the loss of a

tangible item of property. *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th

Cir. 2004) (mem.) (holding that a business property insurance policy did not cover losses

stemming from the removal of a producer's name from the film credits because film credits are

not tangible property); *Commonwealth Enters. v. Liberty Mut. Ins. Co.*, 101 F.3d 705, at *2 (9th

Cir. 1996) (table) (holding that tenants' fear of asbestos contamination that led tenants to vacate

commercial buildings was not physical loss or damage covered under business interruption
provision).

In *Great Northern Insurance Company v. Benjamin Franklin Federal Savings and Loan
Association*, a tenant of a commercial building owned by the insured discovered asbestos while
remodeling their unit and demanded that the insured remove the asbestos. 793 F. Supp. at 261,
*aff'd*, 953 F.2d 1387 (9th Cir. 1992). When the landlord refused to abate the asbestos and the
tenant then vacated the unit, the insured submitted a business interruption claim under its
property insurance policy, which covered "direct physical loss or damage." *Id.* The court ruled
that coverage did not exist based on the presence of asbestos in the building because "[t]here is
no evidence here of *physical* loss, direct or otherwise." *Id.* at 263. Affirming the district court,
the Ninth Circuit held:

> We agree with the district court, applying Oregon case law, that [the insured's] loss
> did not result "from direct physical loss." While [the insured] no doubt sustained
> consequential loss caused by the necessity of cleaning up asbestos, we conclude
> that it did not sustain "direct physical loss."

953 F.2d 1387, at *1 (9th Cir. 1992) (mem.).

Plaintiff's Complaint does not allege a Covered Cause of Loss that would trigger
coverage under any of the relevant provisions of the Policy. Plaintiff does not allege that its
restaurant or the business personal property located inside it was lost, destroyed, or physically
changed in any manner. Nor does Plaintiff allege that any nearby property suffered direct
physical loss or damage that resulted in an action of civil authority that prohibited access to its
restaurants.

Plaintiff's Complaint alleges that (1) "Due to COVID-19 and a state-ordered mandated
closure, Plaintiff was forced to suspend or dramatically reduce its business operations;" and (2)
The presence of COVID-19 aerosolized or suspended droplets or particles in the air or otherwise

circulating in an indoor environment renders that physical space, or physical property, unsafe and unusable[;]" (3) "The presence of COVID-19 aerosolized or suspended droplets or particles in the air or otherwise circulating in an indoor environment causes direct physical damage to property and/or direct physical loss of property[;]" (4) "Plaintiff's property cannot be used for its intended purposes; (5) "Loss caused by Governor Inslee's orders and proclamations and/or related to COVID-19 rendered Plaintiff's property unusable for its intended and insured purpose[;]" and (6) "No COVID-19 virus has been detected on Plaintiff's business premises." Compl. ¶¶ 11, 28–29, 51, 56, 60. Plaintiff also alleges that its "property has sustained direct physical loss and/or damages related to COVID-19 and/or the proclamations and orders." Compl. ¶ 58. Absent from those allegations are any facts from which a factfinder could conclude that any of Plaintiff's business property was lost or damaged. Plaintiff's conclusory allegations that it has suffered direct physical loss and damage are insufficient to state a claim. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal"). The absence of facts demonstrating any physical loss or damage to its business property is fatal to Plaintiff's claim.

Numerous courts in this circuit and around the country have reached the same conclusion that this Court reaches today. *See, e.g.*, *Protégé Rest. Partners, LLC*, 2021 WL 428653, at *4 (finding "direct physical loss of or physical damage to" unambiguous, finding that it requires a "distinct, demonstrable, physical alteration of the property" to invoke coverage, and noting that every California court to address COVID-19 business interruption claims to date has concluded that "government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute 'direct physical loss of or physical damage to' the insured property."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d

738, 740 (S.D. Cal. 2020) (finding that even assuming presence of virus at the plaintiffs'

business premises, business income losses were directly caused by precautionary measures taken

by the state to prevent the spread of COVID-19 rather than by direct physical loss of

or damage to property); *Uncork & Create LLC*, 498 F. Supp. 3d 878, 883 (S.D. W. Va. 2020) (no

coverage because "COVID-19 does not threaten the inanimate structures covered by property

insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Johnson v.*

*Hartford Fin. Servs. Grp.*, No. 20-cv-02000, ___ F. Supp. ___, 2021 WL 37573, at *7 (N.D. Ga.

Jan. 4, 2021) ("COVID-19 hurts people, not property"); *Circus Circus LV, LP v. AIG Spec. Ins.*

*Co.*, ____ F. Supp. ____, 2021 WL 769660, at *3 (D. Nev. Feb. 26, 2021) (ruling that "pure,

economic losses caused by COVID-19 closures do not trigger policy coverage predicated on

"direct physical loss or damage"); *Levy Ad Grp., Inc. v. Chubb Corp.*, ___ F. Supp. ___, 2021

WL 777210, at *3 (D. Nev. Feb. 16, 2021) (same); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, ___

F. Supp. 3d ___, 2021 WL 2184878, at *10–11 (W.D. Wash. May 28, 2021) (granting insurer's

dispositive motions in consolidated actions against ten groups of insurers brought by hundreds of

Washington businesses and finding that COVID-19 does not cause "direct physical damage to"

or "direct physical loss of" property).[2]

 Construing Plaintiff's allegations in the light most favorable to Plaintiff, the losses

Plaintiff alleges are purely economic and not the result of any "direct physical loss of or damage

to property." Plaintiff's pleadings attempt to characterize the harmful effects of government

---

[2] *See also Newman Myers Kreines Gross Harries, P.C. v. Gr. N. Ins. Co.*, 17 F. Supp. 3d 323,
331 (S.D.N.Y. 2014) (finding that the phrase "direct physical loss or damage . . .
unambiguously[] requires some form of actual, physical damage to the insured premises to
trigger loss of business income and extra expense coverage."); *Ass'n of Apartment Owners of
Imperial Plaza v. Fireman's Fund Ins. Co.*, 939 F. Supp. 2d 1059, 1069 (D. Haw. 2013) (that
"direct physical loss or damage" means "that an event had a direct impact and proximately
caused a loss related to the physical matter of the Property.").

closure orders issued in response to the public health crisis presented by the pandemic as "physical loss" or "physical damage," but no physical loss of or physical damage to its property occurred. As a result, no coverage exists under the Business Income and Extra Expense provisions of the Policy.

      i.    The Policy does not cover a "loss of functionality" or inability to use undamaged dining rooms and related property for their intended purpose.

Plaintiff argues that the phrases "loss of" and "damage to" have different meanings from one another and that Plaintiff can recover for a loss of undamaged property. Pl. Opp'n 14–15. The Court agrees. *See Total Intermodal Servs. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908AB (KSx), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018) ("[t]o interpret 'physical loss of' as requiring 'damage to' would render meaningless the 'or damage to' portion of the same clause, thereby violating a black-letter canon on contract interpretation—that every word be given a meaning."). But the Court declines to adopt the definition of "loss" that Plaintiff urges the Court to apply. Plaintiff argues that the Court should apply definitions of the word "loss" that include loss of use or deprivation and find coverage because Plaintiff was deprived of using its dining room for serving dine-in customers. But that argument ignores the context in which those words appear in the Policy. "Loss" and "damage" do not appear in isolation. Those words are modified by the word "physical." Thus, even if in isolation the meaning of loss includes loss of use or deprivation, the modification of those words by the word "physical" means that the insured must demonstrate a loss of use or deprivation that is physical in nature, which requires that the loss involve a loss of possession or presence of the property:

> In order to trigger coverage under a direct physical loss theory, an outside peril must cause an inability to interact with the property because of an alteration to its physical status. COVID-19, and more specifically the Governor's Proclamations, may have limited the uses of the property by preventing certain indoor activities previously conducted on the premises, but they did not cause dispossession of the buildings [or the business personal property located in them].

*Ngyuen*, 2021 WL 2184878, at *10–11. The requirement that "physical loss" requires physical dispossession or loss of the presence of property for coverage to exist is consistent with the authority cited by Plaintiff. For example, Plaintiff cites *Nautilus Group, Inc. v. Allianz Global Risks US* for the proposition that a covered "physical loss" can occur in the absence of any damage. Pl. Opp'n 15–16. In *Nautilus*, the district court found that the insured had suffered a covered physical loss when a disgruntled former employee took important business documents necessary to keep the business open and refused to return them. *Nautilus Grp., Inc. v. Allianz Global Risks US*, No. C11-5281BHS, 2012 WL 760940, at *2–3, 7 (W.D. Wash. Mar. 8, 2012). *Nautilus* is distinguishable from the facts of this case. In *Nautilus*, the insured physically lost possession of the important business documents when the disgruntled former employee took them and refused to return them. *Id.* at *7. Plaintiff's Complaint alleges no similar loss of business property that would trigger coverage under the Policy.

The selective definition of "loss" that Plaintiff urges the Court to apply would render the word "physical" surplusage and is contrary to longstanding insurance law doctrine which provides that all-risk insurance policies are intended to cover damage to property, not economic loss. *Ngyuen*, 2021 WL 2184878, at *11 (finding that the "Plaintiffs conflate *physical* loss with non-physical loss of use.").

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Generally; "Physical" loss or damage*, 10A Couch on Ins. § 148:46 (3d ed. Supp. 2021) (footnotes omitted). As a result, although the word "loss" in isolation has a meaning that could incorporate intangible losses, the Court declines to apply that definition because "loss" is modified by "physical" in the Policy.

The plain meaning of the policy language and the multitude of cases interpreting identical and similar language make clear that "direct physical loss of or damage to property" does not include a loss of use or loss of functionality of undamaged property for its intended purpose. *See, e.g.*, *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021) (holding that policy covering direct "accidental physical loss or accidental physical damage" did not cover oral surgeons' "partial loss of use of its offices . . . due to the COVID-19 pandemic and the related government-imposed restrictions.") (emphasis omitted); *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 298 (S.D. Miss. 2020) ("Plaintiff's *operations* are not what is insured—the building and the personal property in or on the building are."). Even affording Plaintiff the most liberal reading of its allegations, its Complaint alleges only that government orders restricted the manner in which its restaurant may serve customers, while leaving the property itself in Plaintiff's possession, unharmed, and undamaged. As a result, Plaintiff has failed to allege a direct physical loss of or damage to its covered property.

Plaintiff also argues that the Policy defines "Property damage" to include loss of use. Pl. Opp'n 10 (citing Policy 43). The portion of the Policy Plaintiff cited is contained within the "Liability And Medical Expenses Definitions." The Property Coverage section has a definitions section within it called "Property Definitions," and that section includes no definition of property damage. Because each section of the policy contains its own set of definitions, there is no indication that the definitions for the liability and medical expenses sections apply to any other section. Accordingly, the Court declines to apply the definition of "Property damage" from the Liability and Medical Expense section of the Policy to the Property coverage terms.

     ii.  Whether property must become completely uninhabitable or be rendered completely useless to invoke coverage

Plaintiff argues that a line of cases finding that direct physical loss or damage had occurred when a contaminant rendered the property completely uninhabitable or useless applies to the facts of this case. Pl. Opp'n 21–24. Plaintiff relies on cases from other districts and state courts to argue that "physical loss or damage" occurs when business property becomes useless or only partially inhabitable. *Id.* at 11–12. The Court disagrees that those cases compel a finding of coverage in this case.

Plaintiff first relies on *Port Authority of New York and New Jersey v. Affiliated FM Insurance Company*. Pl. Opp'n 23–24. In *Port Authority*, the plaintiff attempted to recover from its insurance company the cost of asbestos abatement in several locations in its buildings. 311 F.3d 226, 230 (3d Cir. 2002). Air sampling results demonstrated that the presence of asbestos fibers did not exceed EPA limits, and the buildings continued to remain in use. *Id.* at 231. The plaintiff's insurance policy covered "ALL RISKS of physical loss or damage." *Id.* The Third Circuit affirmed the district court's conclusion that physical loss or damage occurs only if an actual release of asbestos fibers from asbestos containing materials has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable. *Id.* at 236. Plaintiff argues that the holding of this case is not limited to situations in which a building is completely useless or uninhabitable but also applies to situations in which a building is only partially useless or uninhabitable. Pl. Opp'n 24. As a result, Plaintiff argues, complete loss of utility of some of its property is enough to trigger coverage. *Id.*

The Third Circuit's reasoning in *Port Authority* makes clear that to establish the existence of physical damage sufficient to trigger coverage, the insured must demonstrate that the "actual release of asbestos fibers" resulted in a level of contamination that nearly eliminated or destroyed the function of the building. First, Plaintiff alleges no actual release of any contaminant in its

restaurant, so *Port Authority* is distinguishable. Second, it is the quantity of released asbestos

fibers that informed the analysis of whether a loss of utility had occurred that was significant

enough to amount to loss or damage:

> The effect of asbestos fibers in such quantity is comparable to that of fire, water or
> smoke on a structure's use and function. A less demanding standard would require
> compensation for repairs caused by the inevitable deterioration of materials used in
> the construction of the building. This outcome would not comport with the intent
> of a first-party "all risks" insurance policy, but would transform it into a
> maintenance contract.

*Port Auth. of N.Y. and N.J.*, 311 F.3d at 236.

The same is true of the other cases cited by Plaintiff. *See, e.g.*, *Gregory Packaging, Inc. v.*

*Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418 (WHW)(CLW), 2014 WL 6675934 (D.N.J.

Nov. 25, 2014) (building rendered completely uninhabitable due to ammonia gas infiltration).

Plaintiff's argument thus has two flaws. First, Plaintiff failed to allege any contamination of its

restaurant that rendered it physically uninhabitable. Second, Plaintiff's assertion that those cases

demonstrate that any "loss of functionality" caused by contamination is covered is an overbroad

reading of the rulings in those cases, which apply to contaminations in such quantities that render

buildings temporarily completely uninhabitable. Plaintiff has alleged no similar facts.

      B.    Civil Authority Coverage

For coverage to exist under the Civil Authority provision, Plaintiff must plausibly allege

that "direct physical loss of or damage to property, other than at the described premises,"

occurred. Plaintiff's Complaint alleges that it "was unable to have customers enter into its dining

room or eat any meals on its premises." Compl. ¶ 49. Plaintiff does not allege that it was unable

to access its restaurant dining room. Further, none of the allegations in Plaintiff's Complaint

allege any "direct physical loss of or damage to" any property other than its own. Plaintiff argues

that its allegations that nearby schools closed for cleaning and that statewide property damage

had occurred are sufficient to establish that direct physical loss of or damage to property

occurred to other properties. Pl. Opp'n 32. The Court disagrees. The conclusory allegation that

coverage exists under the Civil Authority provision in the absence of an allegation that direct

physical loss of or damage occurred to another property fails to plausibly allege a claim for

coverage. *See Cousins*, 568 F.3d at 1067 ("conclusory allegations of law and unwarranted

inferences are insufficient to avoid a Rule 12(b)(6) dismissal"). Even if, however, Plaintiff's

Complaint sufficiently alleged that "direct physical loss of or damage to property" occurred at

those other locations, Plaintiff failed to allege that Governor Inslee issued a closure order

because of such alleged loss or damage. As a result, Plaintiff's Civil Authority coverage claim

fails.

## IV.    Context within the Policy as a Whole

When the terms of an insurance policy have plain meaning, then the Court applies the

plain meaning without need to resort to other methods of contract interpretation. *Holloway*, 341

Or. at 650. However, it is worth emphasizing that the context in which the phrases "direct

physical loss," "direct physical loss of or damage to property," and "direct physical loss or

damage to property" appear in the Policy confirms the accuracy of the Court's conclusion that

the Policy requires a direct physical alteration of the condition of the property or dispossession of

the property for coverage to apply.

The Policy covers Plaintiff's business liability and provides property coverage. Policy 60.

Section I of the Policy, which covers "PROPERTY", explains that "Covered Property" includes

items of tangible property including "Buildings," which are defined as "the buildings and

structures at the premises" and their fixtures, additions, and permanently installed machinery;

and "Business Personal Property," including appliances, floor coverings, and outdoor furniture.

*Id*. All items described in the definition of "Covered Property" are tangible items. The "Property Not Covered" also includes a list of tangible items. *Id*. at 8–9. Nothing in the Policy suggests that Covered Property includes intangible things like profitability, business operations, and loss of functionality or use. When read in the context of the Policy as a whole, the phrases "direct physical loss," "direct physical loss of or damage to," and "direct physical loss or damage to" refer to the loss of or damage to the Covered Property—the building, its fixtures, and the personal property in it—and the loss of business income resulting from the insured's inability to continue its business operations as a direct result of having lost or damaged that tangible property.

The definition of "period of restoration" also supports the Court's interpretation that loss of or damage to tangible property must occur to invoke coverage under the Policy. The Business Income and Extra Expense provisions of the Policy provide coverage for certain losses "during the 'period of restoration.'" Policy 81–82. The "period of restoration" starts seventy-two hours after the "direct physical loss or damage" occurs and ends on "[t]he date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when the insured's "business is resumed at a new permanent location," whichever occurs earliest. *Id*. That description of "period of restoration" implies that Plaintiff must lose or suffer physical damage to its tangible property which requires repair or replacement to invoke coverage.

The "Loss Payment" section of the Policy which governs how Defendant will pay for damage to Covered Property also demonstrates that property must be physically lost or damaged to invoke coverage. That provision allows the insurer to decide whether it will

    (1) Pay the value of lost or damaged property;
    (2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality[.]

*Id*. at 75. The option of the insurer to decide whether to repair, replace, or take and pay the insured the value of damaged property also suggests that to invoke coverage (1) the loss or damage of the property must be tangible; and (2) the property must have had an initial satisfactory state that changed to an unsatisfactory state when an external force acted on the property. The "Loss Payment" provision is entirely inconsistent with the Policy covering an inability to use undamaged restaurant buildings and dining rooms. An inability to use property in the manner the insured intended is not something that can be repaired, rebuilt, or replaced. Consequently, the context in which the phrases "direct physical loss of or damage to" and "direct physical loss or damage" appear in the Policy supports the Court's conclusion that coverage does not apply under the plain meaning of the Policy's terms.

## V.    Leave to Amend

Because the Court finds that Plaintiff's Complaint cannot be amended to plausibly allege a claim under the terms of the Policy, the Court denies leave to amend. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if amendment would be futile[.]").

///

///

///

///

///

///

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss [12]. Plaintiff's Complaint is dismissed with prejudice.

IT IS SO ORDERED.


DATED: ~~September 7, 2021~~ .


MARCO A. HERNANDEZ
United States District Judge